MERIDIAN NEWS & PUBLISHING COMPANY ET AL. *v.* DIEM & WING PAPER COMPANY.

RECEIVER. *Appointment. Notice. Decree. Case.*

> Execution creditors of a newspaper publishing company, having levied on its presses and outfit, filed a bill against it and certain claimants under trust-deeds who had bonded the property, alleging that defendants were conspiring to hinder and delay complainants until the debts secured should mature, and the property could be sold, and bought in by claimants; that the immediate appointment of a receiver was necessary.to prevent this, and to subject the income of the property. *Held,* that the appointment of a receiver, without notice, and before process served, was erroneous, since any wrongful disposition could have been prevented by injunction; and, further, that a decree, authorizing the receiver to continue publication of the newspaper, was too broad.

FROM the chancery court of Lauderdale county.

HON. T. B. GRAHAM, Chancellor.

This is a bill filed May 13, 1892, in the chancery court of Lauderdale county by appellees, the Diem & Wing Paper Company and Louis Snider's Sons & Co., in behalf of themselves and such other creditors of the Meridian News & Pub-

lishing Company as would join therein.   The bill alleges that
the complainants named, had each recovered a judgment
against said publishing company in the justice court, and had
caused execution to be issued and levied on the presses, ma-
chinery, type and entire outfit of said company; that there
were prior unsatisfied judgments against the company aggre-
gating about $2,000; that before the recovery of complain-
ants' judgments, said defendant had executed a deed of trust
,on a part of its property to one Johnson, as trustee, to secure
an indebtedness of $1,400 to the Savings Building & Loan
Association, which debt would not mature until 1898; that
the defendant had likewise executed a trust-deed, conveying
all of its visible property to one Moody, as trustee, to secure
an indebtedness of about $8,000 to Lloyd Brothers and J. C.
Lloyd; that this debt would be due July 5, 1892; that when
the executions on complainants' judgments were levied on
the property of said defendant, the trustees in the said deeds
of trust interposed claims to the property, and gave bonds for
its forthcoming; that the constable making the levies de-
manded of the defendant corporation its books of account
and choses in action, whereupon its officers professed ignor-
ance as to the whereabouts of said books of account and
choses in action, and declared their inability to produce them.
The bill further alleges that the trustees are not entitled to
the possession of said property before the maturity of the
respective debts secured by the trust-deeds, and, until then,
complainants are entitled to subject to their judgments all of
said property; that the claimants' affidavits and bonds were
made in fraud of the rights of complainants, and for the pur-
pose of placing the property of said publishing company be-
yond the reach of judgment creditors until the maturity of
the trust-deeds; that the assets of said company, apart from
its choses in action, were insufficient, if sold, to pay the debts
secured by said trust-deeds; that Lloyd Brothers and J. C.
Lloyd were conspiring with the said publishing company to
delay complainants and other creditors until the property

embraced in the trust-deeds could be sold, when it was the purpose of the Lloyds to buy in all the said property, and thus cut off other creditors; that the Lloyds had removed the books and accounts of said publishing company from its office, and were secreting them.

The bill further alleges that the *corpus* of the company's assets, together with its franchises, were insufficient to pay the liens prior to complainants', but that the rents, issues, and profits arising from the property, if subjected to the payment of debts, could be made to pay such prior liens and also complainants' judgments. The bill, which was sworn to by an attorney of the complainants, prayed for the immediate appointment of a receiver to take charge of the property, and rent it out or carry on the business of said publishing company in such manner as would derive the greatest possible revenue therefrom.

The chancellor of the second district, to whom the bill was presented, was disqualified by reason of interest, and, having so certified, the bill was presented to Hon. T. B. Graham, chancellor of an adjoining district. The application for a receiver was made before process was served on the defendants, and without notice to them, the bill alleging that, "because of the limited time remaining before the maturity of the debts secured by said trust-deeds, the immediate appointment of a receiver is necessary to the protection of complainants' rights."

The chancellor appointed the receiver, as prayed in the bill, directing him to take charge of all the real and personal property of said publishing company, including its books of account and choses in action and franchises, and to use and employ the same in such manner as would derive the most possible benefit to all parties interested. The decree further empowered the receiver to employ necessary assistants to carry on and continue the business of the Meridian News & Publishing Company, including the publication of the daily and weekly newspapers. The receiver gave bond and quali-

fied, and was placed in possession of the property by the sheriff, acting under a writ of assistance, which was expressly authorized by the decree. Thereupon the publishing company and Lloyd Brothers and J. C. Lloyd and the Savings Building & Loan Association and the trustees in their trust-deeds, who were parties defendant in the suit, prayed for and obtained an appeal, with *supersedeas*, from the decree appointing a receiver.

*Hamm, Witherspoon & Witherspoon*, and *Miller & Baskin*, for appellant.

The bill fails to charge the corporation with insolvency. On the other hand, it shows that it has assets of all kinds sufficient to pay its indebtedness. It shows that sufficient claimant's bonds have been executed and claimant's issues tendered. If it be true, as alleged, that the affidavits and bonds by claimants were tendered for the purpose of defrauding complainants, this could have been shown in the justice court, and the claims not only defeated, but damages recovered against the claimants. This fact should be decisive against an appeal to equity.

On the facts stated, it was error to appoint a receiver. See *Buckley* v. *Baldwin*, 69 Miss., 804; Wait on Insolvent Corporations, § 178. Unless there is imperious necessity therefor, a receiver should not be appointed upon an *ex parte* application without notice to. defendants. 11 Md., 452; 55 Mich., 396. No sufficient reason is given in the bill for failing to give notice. See 87 Ala., 333, 734; 2 Paige, 150; 30 Iowa, 160; *Whitehead* v. *Wooten*, 43 Miss., 523; 20 Am. & Eng. Enc. L., 28.

*Fewell & Brahan, W. R. Woods* and *McIntosh & Williams*, for appellees.

No briefs on file.

CAMPBELL, C. J., delivered the opinion of the court.

The appointment of a receiver without notice to the de-

fendants, and before answer, or even service of process, was not justified by the facts stated; and, besides, the order appointing the receiver was too broad, in embracing the publication of a daily and weekly newspaper—rather a novel business for a chancery court to engage in. The bill presents a case for the aid of chancery to enable the creditors to obtain their rights by subjecting the assets of the debtor to the payment of the judgments as prayed, but the rights of the complainants could have been preserved, and the danger of transfer of property apprehended, been averted by injunction, and without resorting to the harsh means of an order for a receiver before process and without notice. There is less objection to appointing a receiver without notice now, under the law which requires a bond of the complainant in such cases, than before. Code of 1892, § 575.

*Decree reversed and appointment vacated.*

JUDGE WOODS takes no part in this decision.